UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K ALI,<br>6504 Japonica Street, Springfield, Virginia-22150<br><br>ZHIYUAN BAO,<br>459 SW 111th Pl, Seattle 98146<br><br>OM SACHIN BAMANE,<br>1219 S Dorsey Ln, Apt 101, Tempe, AZ 85281<br><br><br>RANA FAIZ,<br>4726 N 100th St, Apt 104, Wauwatosa, WI53225<br><br><br>FEIYANG HONG,<br>835 Ivy Meadow Ln, Apt 3G, Durham, NC 27707<br><br><br>JEEVAN PRAKASH JANKAR,<br>122 E Clover Hurst Avenue, Apt B7, Athens, GA 30605<br><br><br>XUSHENG JI,<br>3140 Montgomery Dr, Apt. 422, Santa Clara, CA95054<br><br><br>HONGJIANG LI,<br>157 Talley Xing, Apt 217, Athens, GA30601<br><br><br>YEFAN LI,<br>12020 Little Patuxent Pkwy, Apt F, Columbia, MD 21044<br><br><br>FANJUN LIN,<br>315 Dayton St, Apt 706B, Hamilton, OH45011 | Case No.:<br><br><br><br>COMPLAINT |

1

BAOLONG LIU,
66 W38th St, Apt 6H, New York, NY10018

LIU JIABIN
705 Bray Central Dr, Apt 7106, Allen, TX75013

JIAPENG XU,
1336 Stambaugh St, Redwood City, CA94063

LIANG YAN,
505 Summerhill Ln, Apt 3, Ithaca, NY14850

QIAN YANG,
18 Rolling Hills Dr, Pomona, CA91766


ZIYU YI,
888 S Hope St, Unit 2116, Los Angeles, CA90017


XINY ZHOU,
2900 Bartold Ave, Apt 117, St. Louis, MO63143

JIADONG ZHU,
540 Thomson St, 5128 Munger, Ann Arbor, MI 48104


SHIHAO CHEN,
511 W Doty St, Apt 202, Madison, WI 53703


YUJIE CAI,
16400 Spectrum, Irvine, CA92618

SHIRUI MA,
1221 Sonoma Ave, Unit B, Seaside, CA93955

KAICHAO SHANG,
14942 19th Ave, Flushing, NY 11357

JINGBO CHENG,
272 PALM VALLEY BLVD, SAN JOSE, CA95123

                               Plaintiffs,

 Against

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, an agency of the United States,
2707 Martin Luther King Jr Ave SE
Washington, D.C. 20528-0525

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, an agency of the United States,
DHS/ICE
500 12th Street, SW Stop 5600
Washington, D.C. 20536-5600

                              -and-

STUDENT AND EXCHANGE VISITOR PROGRAM, an agency of the United States
DHS/ICE
500 12th Street, SW Stop 5600
Washington, D.C. 20536-5600

                              Defendants

## INTRODUCTION

1. This is an action against the Defendants to hold unlawful and set aside their termination of Plaintiffs' foreign student (F-1) status, and the purported termination of their employment authorization.

## DESCRIPTION OF THE PARTIES

3

2. Plaintiffs are each noncitizens of the United States, lawfully admitted to the United States in F-1 nonimmigrant status pursuant to 8 U.S.C. § 1011(a)(15)(F), Exhibit (Ex.) A at 1 to 24, and currently in various locations throughout the country, either attending schools, or in a period of post completion practical training employment authorization, issued to them based upon their F-1 status.

3. UNITED STATES DEPARTMENT OF HOMELAND SECURITY is an agency of the United States with ultimate authority to manage schools, nonimmigrant students in the F and M visa classifications and their dependents. https://www.ice.gov/sevis

*4.* The Student and Exchange Visitor Program (SEVP) is the Department of Homeland Security's (DHS) program that administers the Student and Exchange Visitor Information System (SEVIS). It claims to ensure that government agencies have essential data related to nonimmigrant students and exchange visitors to preserve national security. SEVP provides approval and oversight to schools authorized to enroll F and M nonimmigrant students and to give guidance to both schools and students about the requirements for maintaining their status. *Id.*

5. Immigration and Customs Enforcement is an agency of the Department of Homeland Security with responsibility for and authority over the actions of the SEVP, inasmuch as SEVP is a part of it. https://studyinthestates.dhs.gov/2015/01/who-sevp.

JURISDICTION

6. This being an action for judicial review of a decision by an administrative agency pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., a law of the United States, this Court has original jurisdiction over this matter under 28 U.S.C. § 1331.

JOINDER

7. Joinder of all Plaintiffs in this action is permissible because they all assert a right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.

8. The right they all assert is to have the Defendants' termination of their lawful F-1 nonimmigrant status held unlawful, and to have it set aside.

9. The transaction, occurrence, or series of transactions or occurrences upon which they assert this right is the decision(s) of one or more Defendants to terminate Plaintiffs' F-1 status for reasons other than as provided in 8 C.F.R. § 214.1(d), as well as the actions taken by the Defendants to do so.

10. Further, the following question of law will arise as to all Plaintiffs in this action:

    Do the Defendants have the authority to terminate Plaintiffs' nonimmigrant status for reasons not stated in 8 C.F.R. § 214.1(d)?

11. Furthermore, the following questions of fact will arise in this action: Was a waiver authorized upon any Plaintiff's behalf revoked, has any private bill been introduced upon their behalf to confer permanent resident status on any of them ; has there been any  notification  published in the Federal Register terminating any Plaintiffs' F-1 status  on the basis of national security, diplomatic, or public safety reasons?

BRIEF STATEMENT OF RELEVANT FACTS

12. Sometime on or about the beginning of April 2025, one or more of the Defendants made a decision to terminate each of the Plaintiffs' F-1 nonimmigrant status for a reason not set forth in 8 C.F.R. § 214.1(d).

13. The means which they chose to implement this decision was by terminating or closing the Plaintiffs' SEVIS (Student and Exchange Visitor Information System) "record" or "account" or "SEVP portal".

14. Beginning on or about Friday, April 4, 2025, each of the Plaintiffs were informed, either by their universities, or by a representative of the Student and Exchange Visitor Program (SEVP) that their SEVIS "record" or "account" or their "SEVP portal" had or shortly would be "closed" or "terminated". Exhibit A at 25 to 64. All of these actions will hereafter be referred to, for simplicity's sake, as "SEVIS record termination".

15. Some of the Plaintiffs also received notice either from their universities, or a representative of SEVP, that the unexpired employment authorization which they had been previously granted by the United States Citizenship and Immigrations Services had been "terminated" or ended.

16. Many of the said messages received by Plaintiffs asserted that as a consequence of this SEVIS termination that the Plaintiff to which it was addressed was no longer in valid F-1 status and/or that they were required to depart the United States, either immediately or within a short period of time.

17. Many of the said messages stated that "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check, an/or has had their VISA revoked[1]. SEVIS record has been terminated …"

18. None of the Plaintiffs have been convicted of crimes rendering them inadmissible to, or deportable from, the United States, nor of any felonies.

19. Most of the Plaintiffs have been convicted of no offense at all, and charges made against many of them have been dismissed or otherwise terminated without action.

---

[1] To be clear, Plaintiffs do not challenge the revocation of any F-1 visa in this case. Instead, Plaintiffs brings this lawsuit to challenge DHS's unlawful termination of their F-1 student status by means of terminating their SEVIS account under the SEVIS system. Indeed, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." See Jie Fang v. Director U.S. Immigration & Customs Enforcement, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

In fact, under this regulation, the revocation of an F-1 visa doesn't provide a basis to terminate an F-1 student's SEVIS record, much less his status. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).5 Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).6 If DHS wishes to terminate F-1 student status after (or independent of) revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

20. Such offenses as any of the Plaintiffs have been convicted of are misdemeanors and/or traffic violations and do not provide a basis for finding them inadmissible to or deportable from the U.S.

21. Even if they were a basis for Plaintiffs being found inadmissible to or deportable from the U.S., any such conviction(s) would not be a basis for termination of their F-1 status under 8 C.F.R. § 214.1(d) or any other provision of the Immigration and Nationality Act or the regulations promulgated pursuant to it.

22. It is the position of the Defendants that termination[2] of a foreign student's SEVIS record terminates his F-1 nonimmigrant status. *Jie Fang v. Dir. United States Immigration & Customs Enforcement*, 935 F.3d 172, 177 (3rd Cir. 2019) (in which the DHS told the plaintiff in that action "[s]ince your SEVIS record has been Terminated you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately.") and so renders them unlawfully present in this country: "Nonimmigrants admitted for duration of status generally begin accruing unlawful presence the day after their status ends, if they remain in the United States" United States Citizenship and Immigration Services[3] > Home Laws and Policy >Other Resources >

---

[2] Undoubtedly this includes its being "closed".
[3] United States Citizenship and Immigration Services is an agency within Defendant Department of Homeland Security.

Unlawful Presence and Inadmissibility https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility.

23. A noncitizen who is unlawfully present in the U.S. for over 180 days and departs is generally inadmissible for 3 years. 8 U.S.C. § 1182(a)(9)(B). A noncitizen who is unlawfully present in the U.S. for a year or more and departs is inadmissible for 10 years. *Id*

### BACKGROUND ON F-1 STUDENT VISAS AND STATUS

24. Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the U.S. Department of State. Then, once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

25. An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3.

26. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advise, and oversees the students attending his or her institution." *Jie Fang*, 935

F.3d at 175.

27. For noncitizen students, they are "subject to an array of regulations." *Id*. (citing 8 C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)). Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). CPT usually occurs during the course of study and before its completion.

28. "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies.

20. "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. §214.2(f)(5)(iv)). "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of studywithout the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

30. Under the regulation, DSOs at schools must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2).

31. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

32. For failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

33. For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

34. Accordingly, the revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record is terminated. However, the SEVIS record may

not be terminated as a result of visa revocation after a student has been admitted into the United States because *the student is permitted to continue the authorized course of study*. *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[4]

35. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5]

36. While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The Immigration Judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates to F-1 student status. *See* 8 C.F.R. § 1003.18(d)(ii)(B). Only when a final removal order is entered would the status be lost.

37. The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

## COUNT 1

---

[4] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—AGENCY ACTION NOT IN ACCORDANCE WITH LAW

**(Unlawful Student Status Termination)**

38.     The foregoing allegations are realleged and incorporated herein.

39. Defendants' termination of Plaintiffs' F-1 status is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas[6] marked the consummation of the agency's decision making process, and is therefore a final order").

40. No waiver authorized upon any Plaintiff's behalf was revoked, nor has any private bill been introduced upon their behalf to confer permanent resident status on any of them; nor has there been any  notification  published in the Federal Register terminating their F-1 status  on the basis of national security, diplomatic, or public safety reasons.

41. Accordingly, Defendants' termination of Plaintiffs' F-1 status was arbitrary, capricious, an abuse of discretion and/or not in accordance with law when it failed to comply with the requirements for termination set forth in 8 C.F.R. § 214.1(d), providing that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.". Order, *Liu v. Noem*, Case No. 25-cv-133-SE (D.N.H., August 10, 2025) (holding that Plaintiff was likely to establish that  DHS's termination of his F-1 student

---

[6] Sic. It is apparent from context that the court was referring to the Plaintiff's F-1 status, not his visa. The DHS has no authority to revoke (or terminate) a visa, the authority for which is reserved to the Secretary of State. 8 U.S.C. § 1201(i).

status was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law where it did not comply with 8 C.F.R. § 214.1(d)).

WHERFORE this Court should hold the termination of Plaintiffs' F-1 status as not in accordance with law and set it aside. 5 U.S.C. § 706

## COUNT 2

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—AGENCY ACTION NOT IN ACCORDANCE WITH LAW

### (Unlawful Termination of Employment Authorization)

42. Defendants' purported termination or revocation of certain Plaintiffs' employment authorization is a final agency action.

43. The Defendants terminate (or purported to terminate or revoke) the certain of the Plaintiffs' employment authorization. Exhibit A at 25-64.

44. Because the sole apparent basis for the termination of these Plaintiffs' employment authorization was the termination of their student status through the means of termination of their SEVIS record, that termination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law where that termination did not comply with 8 C.F.R. § 214.1(d)).

WHERFORE this Court should hold the termination of any of the Plaintiffs' Employment Authorization unlawful as not in accordance with law and set it aside. 5 U.S.C. § 706.

## COUNT 3

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—AGENCY ACTION NOT IN ACCORDANCE WITH LAW

**(Unlawful Termination of Employment Authorization)**

45. The sole relevant basis for the termination of a nonimmigrant's employment authorization is as set forth in 8 C.F.R. § 274a.14.

46. Although 8 C.F.R. § 274a.14(a) sets forth various bases upon which employment authorization can be automatically revoked, none of them include the termination or closure of a foreign student's SEVIS record, nor the termination of their student status.

47. 8 C.F.R. § 274a.14(b) permits employment authorization to be revoked if "Prior to the expiration date, when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown; or Upon a showing that the information contained in the application is not true and correct."

48. Even if the maintenance of student status was a condition upon which employment authorization was granted and has not been met or no longer exists, this is solely because of the unlawful actions of the Defendants, there is no good cause for such a revocation, and there has been no showing that the information contained in any applications for employment authorization filed by any of the Plaintiffs was not true and correct.

49. Even if any of these grounds applied to any of the Plaintiffs, they cannot be a basis for revocation of employment authorization unless the director "serve(s) written notice of intent to revoke the employment authorization. The notice will cite the reasons indicating that revocation is warranted. The alien will be granted a period of fifteen days from the date of service of the notice within which to submit countervailing evidence." § 274a.14(b).

50. 8 C.F.R. § 103.8 provides for the following forms of service:

Types of service--

**(1)** Routine service. Routine service consists of mailing a copy by ordinary mail addressed to a person at his last known address.
**(i)** Routine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address, or
**(ii)** If so requested by a party, advising the party of such notice by electronic mail and posting the decision to the party's USCIS account.
**(2)** Personal service. Personal service, which shall be performed by a Government employee, consists of any of the following, without priority or preference:
**(i)** Delivery of a copy personally;
**(ii)** Delivery of a copy at a person's dwelling house or usual place of abode by leaving it with some person of suitable age and discretion;
**(iii)** Delivery of a copy at the office of an attorney or other person, including a corporation, by leaving it with a person in charge.
**(iv)** Mailing a copy by certified or registered mail, return receipt requested, addressed to a person at his last known address; or
**(v)** If so requested by a party, advising the party by electronic mail and posting the decision to the party's USCIS account.

51. The sole notice of the "termination" (or, more properly, purported revocation) of the Plaintiffs' employment authorization was by the messages attached as Exhibit A at 25-64.

52. None of the Plaintiffs received notice from any director of the revocation or termination of their employment authorization.

53. No notice of the revocation or termination of their employment authorization was received by any of the Plaintiffs except by electronic mail.

54. There is no evidence that any of the Plaintiffs requested service by electronic mail.

55. The electronic mail notice which any of the Plaintiffs received did not satisfy the requirement that notice of the interest to revoke their employment authorization be served upon them.

56. Any electronic mail notice which Plaintiffs received did not grant them any time to present countervailing evidence but rather simply notified them that their optional practical training had ended or had been terminated.

WHEREFORE this Court should hold unlawful and set aside the termination and/or revocation of any of the Plaintiffs' employment authorization as not in accordance with law. 5 U.S.C. § 706

Respectfully submitted this 16th day of April 2025.

/s/ *Michael E. Piston*
Michael E. Piston MI0002
Attorney for the Plaintiffs
37-47 73Rd St, Ste 214
Jackson Heights, NY 11372
Phone:646-876-3772
Fax: 206-770-6350
Michaelpiston4@gmail.com