UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K ALI et al.<br><br>　　　　Plaintiffs,<br><br>Against<br><br>THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY et al.<br><br>　　　　Defendants | Case No.:  25-1151<br><br>STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER |

## INTRODUCTION

   This is an action against the Defendants to hold unlawful and set aside the termination of Plaintiffs' foreign student (F-1) status, and (where applicable) the termination of their employment authorization. Plaintiffs are each noncitizens of the United States, lawfully admitted in F-1 nonimmigrant status pursuant to 8 U.S.C. § 1011(a)(15)(F), Exhibit (Ex.) A at 1-24, and currently present in various locations throughout the country, either attending schools, or in a period of post completion practical training employment authorization, issued to (some of) them in conjunction with their F-1 status.  The Defendants are all agencies of the U.S. government with shared authority for the regulation of foreign students studying in the U.S. The Defendants all reside in the District of Columbia where, upon information and belief, the decision to terminate Plaintiffs' status was taken.

BRIEF STATEMENT OF RELEVANT FACTS

   .   Sometime on or about the beginning of April, 2025, one or more of the Defendants made a decision to terminate each of the Plaintiffs' F-1 nonimmigrant status for a reason not set

1

forth in 8 C.F.R. § 214.1(d) or (g). The means which they chose to implement this decision was by terminating or closing the Plaintiffs' SEVIS (Student and Exchange Visitor Information System**)** "record" or "account" or "SEVP portal"[1]. Upon information and belief, the decision to terminate Plaintiffs' statuses was made at the national headquarters of one or more of the Defendants, given that such notices were sent almost concurrently to Plaintiffs throughout the country.

Beginning on or about Friday, April 4, 2025, each of the Plaintiffs were informed, either by their universities, or by a representative of the Student and Exchange Visitor Program (SEVP), that their SEVIS (Student and Exchange Visitor Information System**)** record was or shortly would be terminated. Exhibit A at 25-64. Some of the Plaintiffs also received notice either from their universities, or by a representative of SEVP, that the unexpired employment authorization which they had been previously granted by the United States Citizenship and Immigrations Services had been "terminated" or ended. *Id.*

Many of the said messages received by Plaintiffs asserted that as a consequence of this SEVIS record termination, the Plaintiff to which it was addressed was no longer in valid F-1 status and/or that they were required to depart the United States, either immediately or within a short period of time. Many of the said messages stated that "TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check, an/or has had their VISA revoked[2]. SEVIS record has been terminated …". None of these

---

[1] For simplicity sake, Plaintiffs will follow the court in *Jie Fang v. Dir. United States Immigration & Customs Enforcement*, 935 F.3d 172, 177 (3rd Cir. 2019) and refer to the Defendants' actions as "terminating" Plaintiffs' "SEVIS record".

[2] To be clear, Plaintiffs do not challenge the revocation of any F-1 visa in this case. Instead, Plaintiffs brings this lawsuit to challenge DHS's unlawful termination of their F-1 student status **Continued in the footer of the next page.**

messages alleged that any of the Plaintiffs had ever been convicted of a crime of violence with a maximum sentence of more than one year, and all Plaintiffs deny having such a conviction.

It is the position of the Defendants that termination of a foreign student's SEVIS record terminates his F-1 nonimmigrant status. *Jie Fang,* 935 F.3d at 177 (in which the DHS told that plaintiff that "[s]ince your SEVIS record has been Terminated you no longer have valid F-1 nonimmigrant status and must either file for reinstatement of your nonimmigrant student status with U.S. Citizenship and Immigration Services (USCIS) or depart the United States immediately.") and so renders them unlawfully present in this country: "Nonimmigrants admitted for duration of status generally begin accruing unlawful presence the day after their status ends, if they remain in the United States" United States Citizenship and Immigration

---

by means of terminating their SEVIS account under the SEVIS system.  Indeed, the revocation of an F-1 visa does  not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system.  For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." See Jie Fang v. Director U.S. Immigration & Customs Enforcement, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.
In fact, under this regulation, the revocation of an F-1 visa doesn't provide a basis to  terminate an F-1 student's SEVIS record, much less his status.  DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."  ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010)  (emphasis added).5  Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).6  If DHS wishes to terminate F-1 student status after (or independent of) revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d).  See Jie Fang, 935 F.3d at 185 n.100.  DHS has not done so here.

Services[3] > Home Laws and Policy > Other Resources > Unlawful Presence and Inadmissibility https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility.

A noncitizen who is unlawfully present in the U.S. for over 180 days and departs is generally inadmissible for 3 years. 8 U.S.C. § 1182(a)(9)(B). A noncitizen who is unlawfully present in the U.S. for a year or more and departs is inadmissible for 10 years. *Id*

**BACKGROUND ON F-1 STUDENT VISAS AND STATUS**

Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the U.S. Department of State. Then, once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certificationthrough the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the

---

[3] United States Citizenship and Immigration Services is an agency within Defendant Department of Homeland Security.

United States. *See* 8 C.F.R. § 214.3. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advise, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175 For noncitizen students, they are "subject to an array of regulations." *Id*. (citing 8C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)).

Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). CPT usually occurs during the course of study and before its completion.

"The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*. (quoting 8 C.F.R.§ 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies.

Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. § 214.2(f)(5)(iv)). "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of studywithout the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

Under the regulation, DSOs at schools must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). The regulations distinguish between

5

two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

For failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

Accordingly, the revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of visa revocation after a student has been admitted into the United States

6

because *the student is permitted to continue the authorized course of study*. *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[4]

DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5]

While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. *See* 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The Immigration Judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates to F-1 student status. *See* 8 C.F.R. § 1003.18(d)(ii)(B). Only when a final removal order is entered would the status be lost.

The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

THE LEGAL STANDARD FOR A TEMPORARY RESTRAINING ORDER

---

[4] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

A temporary restraining order "is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Postal Police Officers Ass'n v. United States Postal Serv.*, 502 F. Supp. 3d 411, 418 (D.D.C. 2020) (quoting *Cobell v. Norton*, 391 F.3d 251, 258, 364 U.S. App. D.C. 2 (D.C. Cir. 2004)). An application for a TRO is analyzed using the same factors applicable to a request for preliminary injunctive relief. *See, e.g., Gordon v. Holder*, 632 F.3d 722, 723-24, 394 U.S. App. D.C. 158 (D.C. Cir. 2011) (applying preliminary injunction standard to district court decision denying motion for TRO and preliminary injunction); *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011) (articulating TRO elements based on preliminary injunction case law).

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392, 396 U.S. App. D.C. 1 (D.C. Cir. 2011) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (per curiam) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (internal quotation marks omitted)). A plaintiff seekinG preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038, 408 U.S. App. D.C. 291 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (internal quotation marks omitted)). When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197, 410 U.S. App. D.C. 80 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571

8

F.3d 1288, 1292, 387 U.S. App. D.C. 205 (D.C. Cir. 2009)) (internal quotation marks omitted). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis*, 571 F.3d at 1291. Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

Further, this Court also has the authority under the Administrative Procedure Act to postpone the effectiveness of the termination of Plaintiffs' F-1 nonimmigrant status as well as the termination and revocation of some of the Plaintiffs' employment authorization. 5 U.S.C. § 705.

## APPLICATION OF THE LEGAL STANDARD TO PLAINTIFFS' MOTION

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

**A. This Court has jurisdiction over this action**

This being an action for judicial review of decisions made by an administrative agency pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., a law of the United States, this Court has original jurisdiction over this matter under 28 U.S.C. § 1331.

**B.  Venue is proper in this District**.

All of the Defendants reside in the District of Columbia. 28 U.S.C. § 1391(e)(1)(A). Plaintiffs are unaware of any evidence suggesting that the decision to terminate their statuses was made by an official not based in D.C., and the fact that notice of such terminations were sent to numerous Plaintiffs all over the country almost concurrently suggest very strongly that the decision to terminate was made at one or more of the Defendants' national headquarters.

**C. Joinder of the Plaintiffs is permissible.**

9

Joinder of all Plaintiffs in this action is permissible because they all assert a right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.

1. The right they all assert is to have the Defendants' decision to hold that they are no longer in lawful F-1 nonimmigrant status unlawful, and to have it set aside.

2. The transaction, occurrence, or series of transactions or occurrences upon which they assert this right is the decision(s) of one or more Defendants to terminate Plaintiffs' F-1 status for reasons other than as provided in 8 C.F.R. § 214.1(d), as well as the actions taken by the Defendants to do so

   Further, the following question of law will arise as to all Plaintiffs in this action:

   "Do the Defendants have the authority to terminate Plaintiffs' F-1 nonimmigrant status for reasons not stated in 8 C.F.R. § 214.1(d)?"

3. Furthermore, the following questions of fact will arise in this action: Was a waiver authorized upon any Plaintiff's behalf revoked, has any private bill been introduced upon their behalf to confer permanent resident status on any of them ; has there been any notification published in the Federal Register terminating any Plaintiffs' F-1 status on the basis of national security, diplomatic, or public safety reasons.?

D. **The Defendants' termination of Plaintiffs' F-1 status was not in accordance with the only applicable law – 8 CFR 214.1(d).**[6]

---

[6] While 8 C.F.R. § 214.1(e)-(g) provides various reasons why an foreign student might violate their status, these are merely charges which could be made in removal proceedings in which the DHS would have the burden of proving that the described status violation occurred by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). None of them provide a basis for the government to unilaterally "terminate" their status, thus "ending" thus ending it and rendering them unlawfully present.

Defendants' termination of Plaintiffs' F-1 status is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas[7] marked the consummation of the agency's decisionmaking process, and is therefore a final order"). The Defendants have made no claim that any waiver authorized upon any Plaintiff's behalf was revoked, nor that any private bill has been introduced upon their behalf to confer permanent resident status on any of them ; nor that there been any notification published in the Federal Register terminating their F-1 status on the basis of national security, diplomatic, or public safety reasons.

Accordingly, Defendants' termination of Plaintiffs' F-1 status was not in accordance with law when it failed to comply with the requirements for termination set forth in 8 C.F.R. § 214.1(d), providing that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.". Order, *Liu v. Noem*, Case No. 25-cv-133-SE (D.N.H., August 10, 2025) (holding that Plaintiff was likely to establish that DHS's termination of his F-1 student status was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law where it did not comply with 8 C.F.R. § 214.1(d)) (Exhibit A at 65-69).

---

[7] *Sic*. It is apparent from context that the court was referring to the Plaintiff's F-1 status, not his visa. The DHS has no authority to revoke (or terminate) a visa, the authority for which is reserved to the Secretary of State. 8 U.S.C. § 1201(i).

WHEREFORE it is likely this Court will hold the termination of Plaintiffs' F-1 status to be not in accordance with law, and therefore hold it unlawful and set it aside. 5 U.S.C. § 706. Accordingly, Plaintiffs are likely to prevail on the merits of this action.

II.     PLAINTIFFS WILL SUFFER IRREPABLE HARM IF A TRO DOES NOT ISSUE

Because each Plaintiffs' F-1 nonimmigrant status was terminated no later than April 11, 2025, they all lack lawful immigration status. That injury is certain, great, imminent, and beyond remediation, as it subjects them to the immediate potential of removal proceedings. *See Stellar IT Sols., Inc.*, 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413, at *11 (finding that plaintiff who was, as a result of an H-1B denial, "without legal status at this moment and could, by law, be placed in removal proceedings at any time[8]" had established irreparable harm). Additionally, after 180 days from the termination of their status (by the plaintiffs' calculation, no later than October 8, 2025), they will be deemed, upon departure from the United States, inadmissible for the next three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I), United States Citizenship and Immigration Services[9] > Home Laws and Policy >Other Resources > Unlawful Presence and Inadmissibility https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-

---

[8] With the commencement of removal proceeding lies the very real threat Plaintiffs maybe detained and transferred to some distant location, often in deplorable conditions, far from friends and family, there to languish indefinitely during removal proceedings, as has happened to other students placed in removal proceedings. *See, e.g.,* Billal Rahman and Dan Gooding "Inside the Louisiana Detention Center Where Mahmoud Khalil Is Being Held",  (March 13, 2025) ("'Mahmoud is one of hundreds of immigrants held in CLIPC, a private prison with abusive conditions that gives executives billions of dollars in taxpayer handouts,' … The Central Louisiana ICE Processing Center, located in Jena, Louisiana, is one of the largest immigration detention facilities in the United States. Louisiana is the second-largest state for immigration detention, trailing only Texas. The facility is operated by GEO Group, a private prison corporation that contracts with ICE. ….'GEO Group's inhumane, exploitative business cuts costs by denying minimum access to adequate food and medical care and threatening solitary confinement and other punishment to coerce unpaid labor from detained people,'" https://www.newsweek.com/mahmoud-khalil-ice-detention-center-louisiana-2044417 (last accessed April 16, 2025).

[9] United States Citizenship and Immigration Services is an agency within Defendant Department of Homeland Security.

inadmissibility https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility. ("Nonimmigrants admitted for duration of status[10] generally begin accruing unlawful presence the day after their status ends, if they remain in the United States."). Accordingly, Plaintiffs must imminently begin making arrangements to vacate the country—or resign themselves to facing life-altering legal consequences, such as being unable to complete their degree program or post completion training, with severe implications for their family and career. These highly disruptive consequences are similarly grave and beyond remediation. *See Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 U.S. Dist. LEXIS 79217, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (holding that "halting the accrual of unlawful presence time and/or unauthorized employment for . . . class members" would "prevent irreparable harm to class members and their families").

In the face of such a definite harm, this Court need not wait some vague period of time (until, say, June or July) before acting. Said differently, Plaintiffs are not facing "something merely feared as liable to occur at some indefinite time in the future." *Carabillo v. Ullico Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S. Ct. 286, 75 L. Ed. 602 (1931)). Rather, in light of the explicit statutory deadline, they face a "clear and present need" for relief. *League of Women Voters*, 838 F.3d at 8. *See generally, Thatikonda v. United States Citizen & Immigration Servs.*, 2020 U.S. Dist. LEXIS 78762, *16-17, 2020 WL 2126716 (D.C.D.).

**BALANCING THE EQUITIES AND THE PUBLIC INTEREST**

In facing a virtually indistinguishable situation, one court conducted the following analysis:

---

[10] All of the Plaintiffs were admitted to the U.S. for duration of status. Exhibit A at 1-24.

> The final two factors—the balancing of the harm to the opposing party and consideration of the public interest—are "pertinent in assessing the propriety of any injunctive relief" and the Court must weigh them with "serious consideration." *Winter*, 555 U.S. at 27, 32. However, these two factors merge when the government is the nonmoving party. *See Ramirez*, 310 F. Supp. 3d at 32 (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)). As a result, the only remaining question is whether any significant "public consequences" would attend the issuance of an injunction. *Id.* at 32 (quoting *Winter*, 555 U.S. at 24).
>
> The postponement of the effective date of USCIS's [action] is explicitly contemplated by the APA, which allows a reviewing court "to postpone the effective date of an agency action or preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Such a stay can issue "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Id.* Here, a stay would mean that Mr. Venkatraman's petition reverts to pending status, meaning that under 8 C.F.R. § 214.2(h)(2)(i)(H), he would retain lawful status and be able to begin new employment. *See Stellar IT Sols.*, v. United States Citizenship and Immigration Services 2018 U.S. Dist. LEXIS 196284, 2018 WL 6047413, at *12 (D.D.C.) ("Once the Court orders that the effectiveness of the agency's decision is stayed, the regulation does the rest of the work."). The Court finds that such limited relief would effectively balance the equities at stake and serve the public interest.

*Thatikonda,* 2020 U.S. Dist. LEXIS 78762, *17-19, 2020 WL 2126716 (D.D.C.)

The same analysis applies here.

## **CONCLUSION**

This Court should postpone the effectiveness of the termination of the Plaintffs' F-1 status until further notice. Further, inasmuch as the termination of their F-1 status is apparently the sole basis for the termination of the employment authorization of certain Plaintiffs, the effectiveness of the termination (or revocation) of their employment authorization should also be postponed. Finally the Court should order that none of the Plaintiffs should be detained on the basis of a Notice to Appear charging them with being removable solely because their F-1 nonimmigrant status has been terminated for a reason not set forth in 8 C.F.R. § 214.1(d).

Respectfully Submitted this 16th day of April, 2025.

/ s/ *Michael E. Piston*

Michael E. Piston  MI0002
Attorney for the Plaintiffs
37-47 73rd St, Ste 214
Jackson Heights, NY 11372
Phone: 646-876-3772
Fax: 206-770-6350
Michaelpiston4@gmail.com